**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARGARET SHAWVER,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **5:26-cv-247** |
| | § | |
| **LINCOLN NATIONAL LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
| **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Lincoln National Life Insurance Company wrongfully terminated Margaret Shawver's long-term disability (LTD) benefits.

## PARTIES

1. Plaintiff Margaret Shawver is a resident of Spring Branch, Comal County, Texas.

2. Defendant Lincoln National Life Insurance Company is an insurance company licensed to do business in Texas and can be served with citation by serving its agent for service of legal process Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

3. This lawsuit is a claim for disability benefits provided by an ERISA welfare benefit plan brought under 29 U.S.C. §1132(a)(1)(B). This court has

jurisdiction over this claim for disability benefits under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Venue is proper in the Western District of Texas, San Antonio Division, in accordance with 29 U.S.C. §1132(e)(2) as the breach of the obligation to continue to pay LTD benefits to Shawver under the group policy occurred in Spring Branch, Comal County, Texas.

## STATEMENT OF FACTS

4. Prior to becoming disabled, Shawver worked as a Technical Support Analyst for Apple Inc. By virtue of her employment, Shawver had short-term disability (STD) and long-term disability (LTD) coverage under disability benefit plans insuring employees of Apple. The STD plan is administered by Sedgwick Claims Management Services Inc. The LTD group policy is underwritten and administered by Lincoln.

5. As of March 12, 2024, Shawver could no longer perform her job duties for Apple due to severe chronic pain in her shoulders, neck, upper back, and hips. She could no longer hold her arms up for an extended period-of-time due to chronic pain in her neck, shoulders and upper back, and she could not sit or stand for extended periods of time due to pain. She suffered, and continues to suffer, from lumbar spondylosis, cervicalgia, cervical radiculopathy, thoracolumbar scoliosis, Ehlers-Danlos syndrome (a connective tissue disorder), chronic pain syndrome, fibromyalgia, and headaches

6. Shawver submitted a claim for STD benefits, which last for a maximum period of 26 weeks. Sedgwick approved her claim for the maximum period, from March 13, 2024 until September 12, 2024.

7. Lincoln's LTD group policy is integrated with the STD plan. The LTD policy requires that a claimant be disabled for 26-weeks (the "elimination period") before LTD benefits are paid. In the Lincoln LTD policy under which Shawver is insured, the definition of disability changes after 12 months of LTD payments. During the first 12 months, an 'own occupation" definition of disability is to be applied: an assessment of whether or not the claimant, due to illness or injury, is unable to perform the occupation that she performed before becoming disabled. After 12 months of LTD benefit payments, the definition of disability changes to an "any occupation" definition.

8. Initially, despite the definition of disability being approximately the same as the definition for STD benefits, an "own occupation" definition, Lincoln denied Shawver's claim for LTD benefits. She appealed and provided additional medical support for her claim. Lincoln subsequently overturned its decision to deny "own occupation" LTD benefits. While her LTD "own occupation" disability claim was pending, Lincoln sent a letter to Shawver urging her to apply for Social Security disability income benefits (SSDI benefits), which has an "any occupation" definition of disability. Lincoln urged her to employ a firm called Brown and Brown to pursue her SSDI claim. Obviously, Lincoln would not have

referred her to Brown and Brown if the Lincoln claims personnel didn't think her "any occupation" disability claim had merit.

9. Nevertheless, despite this assessment that Shawver would probably qualify for SSDI benefits because of her severe impairments, Lincoln decided to terminate her benefits after the 12-month own occupation period. In a letter dated May 29, 2025, Lincoln advised Shawver they were terminating benefits effective September 13, 2025, because she did not qualify for "any occupation" disability benefits. Lincoln's claims personnel relied upon hired medical consultants who regularly conduct file reviews for Lincoln.

10. Shawver's chronic pain from fibromyalgia, lumbar spondylosis, cervicalgia, cervical radiculopathy, thoracolumbar scoliosis, Ehlers-Danlos syndrome, chronic pain syndrome, and headaches had not improved as of September 13, 2025, as the medical records that are part of the claim file prove. She could not return to any sort of full-time employment. Shawver timely appealed, providing additional medical records, including physical therapy records and records from her rheumatologist indicating her fibromyalgia had not improved. Nevertheless, Lincoln paid for more medical file reviewers (since the ERISA claims procedures require that the same medical consultants can't be used for both the consideration of the claim and the consideration of the appeal) who, not surprisingly, agreed with their cohorts that Shawver could work at some full-time occupation. Lincoln sent Shawver notice dated December 5, 2025 that her

appeal was denied, i.e. that her LTD benefits were properly terminated effective September 13, 2025.

11. In the final denial, Lincoln notified Shawver that she had exhausted her rights of administrative appeal and her claim was closed.

**Exhaustion of Appeal Requirements**

12. Shawver exhausted the administrative appeal requirements of ERISA and the Lincoln LTD group policy and therefore has the right to bring this action.

**The Decision to Terminate Shawver's LTD Benefits Was Contrary to the Preponderance of the Evidence and Also Was an Abuse of Discretion**

13. Even if there is language in the policy or plan-related documents that is interpreted to grant Lincoln discretion to make benefit determinations under the group LTD policy, these discretionary provisions are unenforceable as to Shawver's claim for LTD benefits because it is a violation of Texas law to seek enforcement of a discretionary clause in a disability policy against an insured living in Texas. Texas Insurance Code, §1701.062, and 28 Texas Administrative Code §§3.1201-3.1203. This anti-discretionary statute and its accompanying regulations are not preempted by ERISA.

14. The preponderance of the evidence shows that Shawver remains unable to perform any full-time occupation as of September 13, 2025 and thereafter. She is entitled to continued LTD benefits as of September 13, 2025 and thereafter.

15. In the unlikely event that Lincoln is found to have retained its discretionary authority so that this matter is reviewed under an abuse of discretion

standard of review, Lincoln abused its discretion in terminating Shawver's LTD benefits.

16. Lincoln's decision to terminate Shawver's LTD benefits beyond September 12, 2025 resulted in Lincoln saving money, as Lincoln is both the decision-maker and the underwriter of LTD benefits. As a result, Lincoln acted under a conflict of interest when it terminated her LTD benefits. If abuse of discretion is determined to be the proper standard of review, this conflict of interest should be considered as a factor by this Court in determining whether Lincoln abused its discretion in terminating Shawver's LTD benefits.

## CAUSE OF ACTION

### Claim for LTD Benefits from September 13, 2025 And Thereafter Under 29 U.S.C. §1132(a)(1)(B) of ERISA

17. Shawver seeks to recover LTD benefits from September 13, 2025 to the present (and so long as this case is pending), under the authority of 29 U.S.C. §1132(a)(1)(B) of ERISA. Since she remains disabled as that term is defined within the LTD policy, Shawver is entitled to LTD benefits and Lincoln is obligated to pay those benefits under the LTD group policy.

## RELIEF REQUESTED

18. Lincoln owes Shawver $3,008.72 per month under the group policy beginning September 13, 2025 (50% of her pre-disability pay). As of September 13, 2026, she is entitled to the sum of $36,104.64 in back benefits ($3,008.72 x 12 months). Shawver requests these back benefits as well as additional monthly

benefits that accrue after September 13, 2026 but during the pendency of this litigation at the rate of $3,008.72 per month.

## ATTORNEY'S FEES

19. Shawver requests her attorney's fees and costs under 29 U.S.C.A. 1132(g).

## CONCLUSION

Shawver requests back LTD benefits in the amount of $36,104.64, plus monthly disability benefits that accrue after September 13, 2026 but while this case is pending at the rate of $3,008.72 per month. She also requests her attorney's fees, pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which she may show herself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Commerce Building
314 E. Commerce, Suite 300
San Antonio, Texas 78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By: *[/s/ Jeffrey E. Dahl]*
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Margaret Shawver**